Philip J. Wang (State Bar No. 218349)
Traci M. Keith (State Bar No. 235828)
**WANG & CHANG**
255 California Street, Suite 525
San Francisco, California 94111
Phone: (415) 599-2828
Fax:     (415) 599-2829
Email: phil@wangchanglaw.com
        traci@wangchanglaw.com

Attorneys for Non-Party
*RPX Corporation*

**RS**

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

VIRNETX, INC. ET AL.,

CV 14 Case No. 0 013MISC

                      Plaintiffs,

        vs.

APPLE INC.,

                      Defendant.

(Civil Action Nos. 6:11-cv-563 & 6:12-cv-855 pending in the Eastern District of Texas)

**RPX CORPORATION'S NOTICE OF MOTION AND MOTION TO QUASH SUBPOENA ISSUED BY VIRNETX, INC.; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION**

**[Declaration of Philip J. Wang, Declaration of Paul Saraceni, and [Proposed] Order filed concurrently herewith]**

1     Pursuant to Federal Rule of Civil Procedure 26(b) and 45(c), Non-Party RPX

2  Corporation ("RPX") hereby moves to quash a subpoena seeking testimony and the production

3  of documents issued to RPX by VirnetX, Inc. in connection with *VirnetX, Inc. et al. v. Apple

4  *Inc.,* Civil Action Nos. 6:11-cv-563 & 6:12-cv-855 (E.D. Tex.).

5     This Motion is based upon this Notice of Motion and Motion, the accompanying

6  Memorandum of Points and Authorities in Support of RPX's Motion to Quash, the Declaration

7  of Philip J. Wang, the Declaration of Paul Saraceni, and all exhibits attached thereto.

8

9  DATED: January 21, 2014                        Respectfully submitted,

10                                                 WANG & CHANG

11

12

13                                                 Philip J. Wang

14                                                 Attorneys for Non-Party *RPX Corporation*

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

I.   PRELIMINARY STATEMENT .................................................................................................................. 1

II.  STATEMENT OF FACTS ...................................................................................................................... 2

A.   The Underlying Litigation ........................................................................................................... 2

B.   RPX Files IPRs ................................................................................................................................. 3

C.   Subpoena Requests ....................................................................................................................... 3

III. VIRNETX'S SUBPOENA SHOULD BE QUASHED ............................................................................ 5

A.   VirnetX's Subpoena Should be Quashed Because it is Not Relevant to the Claims or
Defenses of any Party ........................................................................................................................... 5

B.   VirnetX's Subpoena Should be Quashed because it is Overbroad, Seeks Protected
Information, and Seeks Information Available Elsewhere ........................................................... 7

1.   VirnetX's Subpoena Demands Production of Almost Every Document RPX Possesses ........... 7

2.   VirnetX's Subpoena Demands Production of RPX's Protected Confidential and Privileged
Information ............................................................................................................................................. 8

3.   VirnetX's Subpoena Demands Information that is Available Publicly or from Apple .............. 9

C.   VirnetX's Subpoena is an Improper Attempt to Circumvent the IPR Proceedings ......... 10

D.   Enforcement of VirnetX's Subpoena Chills First Amendment Rights and Thus Must be
Held to a Higher Standard of Review ............................................................................................... 12

IV.  CONCLUSION ..................................................................................................................................... 14

RPX CORPORATION'S
MOTION TO QUASH SUBPOENA (APPLE)
CASE NO. _____

**Cases**

*Abbott Laboratories v. Cordis Corp.*, 710 F.3d 1318, 1326 .......................................................... 11

*Citizens United v. FEC*, 558 U.S. 310, 342 (2010) ..................................................................... 12

*Dart Indus. Co., Inc. v. Westwood Chem. Co., Inc.*, 649 F.2d 646, 649 (9th Cir. 1980) ................ 7

*Highfields Capital Management, L.P. v. Doe*, 2005 U.S. Dist. LEXIS 29680 (N.D. Cal. May 31, 2005) ............................................................................................................................................ 10

*Kottle v. Northwest Kidney Ctrs.*, 146 F.3d 1056, 1059 (9th Cir. 1998) ...................................... 13

*Mattel Inc. v. Walking Mountain Productions*, 353 F.3d 792, 813 (9th Cir. 2003) ............. 7, 8, 10

*McErlain v. Park Plaza Towers Owners Ass'n*, 2013 U.S. Dist. LEXIS 179176 .......................... 7

*Moon v. SCP Pool Corp.*, 232 FRD 633, 637 (C.D. Cal. 2005) ............................................ 5, 6, 7

*NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449, 461 (1958). ............................................... 12

*New York Times Co. v. Sullivan*, 376 U.S. 254, 265 (1964) ........................................................ 12

*Nidec Corp. v. Victor Co. of Japan*, 249 F.R.D. 575, 577 ............................................................ 9

*Perry v. Schwarzenegger,* 591 F.3d 1126, 1140 (9th Cir. 2009). ........................................ 12, 14

**Statutes**

35 U.S.C. § 315(e) ......................................................................................................................... 6

35 U.S.C. § 311 ............................................................................................................................. 3

35 U.S.C. § 315(b) ......................................................................................................................... 3

35 U.S.C. § 316(a) .................................................................................................................. 10, 11

Federal Rules of Civil Procedure 26(b) ............................................................................. passim

Federal Rules of Civil Procedure 45 .................................................................................. passim

## MEMORANDUM OF POINTS AND AUTHORITIES

**I.  PRELIMINARY STATEMENT**

In a blatant attempt to circumvent the limited discovery procedures in the *inter partes* review ("IPR") process before the Patent Trial and Appeal Board ("PTAB"), and to harass Non-Party RPX Corporation ("RPX"), VirnetX, Inc. ("VirnetX") has issued 168 over-broad subpoena requests – for documents and deposition testimony – against RPX in a patent case pending against Apple Inc. ("Apple") in the Eastern District of Texas (the "Subpoena").[1] RPX has no relationship with the patent infringement lawsuit. RPX filed seven IPR petitions with the U.S. Patent and Trademark Office ("PTO") challenging the validity of some of the patents involved in the underlying litigation, but the IPR proceedings are separate from the litigation and under the jurisdiction of the PTO, not the Court. VirnetX's subpoena is so abusively-drawn that it purports to encompass, *inter alia*, all of RPX's business dealings, all shareholders, as well as the personal finances and associations of everyone who has ever been associated with RPX, a publicly-traded Delaware corporation with over 50 million shares listed on the NASDAQ. The Court should quash VirnetX's subpoena in its entirety pursuant to Rules 45(c) and 26(b) of the Federal Rules of Civil Procedure for the following reasons:

**First**, the Subpoena seeks information not relevant to the underlying litigation. RPX is not a party to VirnetX's suit against Apple and is not accused of infringing VirnetX's patents. To the extent that VirnetX seeks documents to support a claim of estoppel against Apple, that claim is not relevant as it is both premature and speculative; estoppel would not attach unless and until the PTAB issues a final written decision and unless and until that decision finds that the patents involved are valid and that Apple is a real party in interest with respect to the IPR Petitions filed by RPX.

**Second**, enforcement of the Subpoena would be unduly burdensome on non-party RPX. The requests are so overbroad that they evince a clear intent to harass RPX. Moreover, they

---

[1] VirnetX has served RPX with an identical subpoena in connection with a patent case it has pending against Microsoft Corporation ("Microsoft"), also in the Eastern District of Texas. RPX is concurrently filing a motion to quash the identical subpoena VirnetX served on RPX in the Microsoft litigation.

1   seek information protected from disclosure, including attorney-client privileged information and
2   confidential commercial information as well as information that is either publicly available or
3   more readily available from Apple, a party to the litigation.

4   **Third**, the Subpoena was clearly brought to circumvent the limited discovery
5   procedures in the IPR proceedings before the PTAB. No less than 36 of VirnetX's requests
6   seek information directly related to the IPR proceedings, which bear no relationship to the
7   district court case. VirnetX is seeking but has not obtained permission to take discovery from
8   the PTAB. Thus, the Subpoena is a blatant attempt to intrude upon the PTAB's jurisdiction.

9   **Finally**, enforcement of the Subpoena would chill the First Amendment right of
10  association and the right to petition the government of RPX, its employees, and almost everyone
11  ever associated with RPX. Because of this encroachment, the Subpoena is held to a heightened
12  standard – it must be highly relevant to the litigation and carefully tailored. The Subpoena is
13  neither.

14      Accordingly, the Court should quash the Subpoena in its entirety.

15  **II.     STATEMENT OF FACTS**

16      **A.     The Underlying Litigation**

17      VirnetX filed suit against Apple on November 1, 2011 in the Eastern District of Texas,
18  asserting that Apple infringed U.S. Patent No. 8,051,181 (the "'181 Patent"). Wang Decl.,
19  Exh. 3. On November 6, 2012, VirnetX sued Apple again in the Eastern District of Texas
20  asserting infringement of U.S. Patent Nos. 6,502,135, 7,418,504, 7,490,151, and 7,921,211.
21  Wang Decl., Exh. 4. On June 18, 2013, the Court consolidated the two cases (together, the
22  "Apple Litigation").

23      On April 22, 2013, VirnetX sued Microsoft in the Eastern District of Texas (Docket #11
24  [as corrected] in C.A. 6:13-cv-00351. VirnetX alleges that Microsoft infringes U.S. Patent Nos.
25  6,502,135, 7,188,180, 7,418,504, 7,490,151, 7,921,211 and 7,987,274.

26      RPX is not a party to either the Apple Litigation or the Microsoft Litigation
27  (collectively, the "Underlying Litigation").

28

**B.      RPX Files IPRs**

RPX is a publicly-traded Delaware corporation founded in 2008 and headquartered in San Francisco, California. *See* Saraceni Decl., ¶ 2. RPX is a provider of patent risk management services and has over 100 employees. *See id.*

On November 20, 2013, RPX filed seven (7) IPR petitions (the "Petitions") with the PTAB challenging the validity of certain claims of Patent Nos. 6,502,135, 7,490,151, 7,921,211, and 7,418,504 (the "IPR Proceedings"). Saraceni Decl., ¶ 3. An IPR is a statutorily-authorized proceeding to challenge the validity of one or more claims of an issued patent. 35 U.S.C. § 311. The patents challenged by RPX in the IPR Proceedings issue in the Apple Litigation. Under 35 U.S.C. § 315(b), an IPR cannot be instituted "if the petition requesting the proceeding is filed more than 1 year after the date on which the petitioner, real party in interest, or privy of the petitioner is served with a complaint alleging infringement of the patent." In support of the Petitions, RPX certified that it had not been served with a complaint alleging infringement of any patent, and that it was the real party in interest for the IPR Proceedings and was not in privity with any party that was served with a complaint of patent infringement more than one year prior to the filing of the Petitions. *See* Saraceni Decl., ¶ 4.

**C.      Subpoena Requests**

On December 26, 2013, VirnetX served a subpoena for documents and testimony on RPX in the Apple Litigation. *See* Wang Decl., Exh. 1 (as noted previously, an identical subpoena was also served by VirnetX on RPX in the Microsoft Litigation). The Subpoena demands production of 84 categories of documents and deposition testimony on 84 identical topics. The information requested is extremely broad. By way of example, the following three Requests, taken together, arguably seek production of every business document that RPX has in its possession:

- Documents that describe, identify, refer to, or relate to the Company's officers, directors, employees, agents, representatives, and consultants. (Request No. 6)

- Documents that describe, identify, refer to, or relate to the Company's business or industry. (Request No. 9)

- Documents that describe, identify, refer to, or relate to each of the Company's members or clients. (Request No. 82)

1    VirnetX's requests are also burdensome and intrusive, including requests for years of

2    personal bank account information, personal phone logs, disclosure of professional and personal

3    relationships, and personal stock transactions and holdings for all of RPX's 100-plus employees

4    and almost anyone ever associated with RPX:

5            • All bank statements over the past three (3) years for each personal and business
              bank accounts of each of the Company's past and present directors, officers,
6            employees, agents, organizers, attorneys, agents, representatives, and
             consultants. (Request No. 41)

7
             • As to any of your past and present directors, officers, employees, agents,
8            organizers, attorneys, agents, representatives, and consultants who was involved,
             to any extent in any IPR concerning VirnetX's patents (including the decision to
9            file any IPR involving VirnetX's patents), all such persons' phone logs and
             records (for both personal and business phone lines) over the past three (3) years.
10           (Request No. 42)

11           No fewer than 18 of the Requests for Production and 18 of the corresponding Topics for

12    Deposition explicitly reference RPX's IPR Petitions to the PTO, documents that are clearly

13    intended for use in the IPR Proceedings rather than in the Mircosoft Litigation. These include

14    demands for documents regarding RPX's decision to file (and decisions not to file) IPRs,

15    decision about what counsel to hire, documents relevant to the determination of the real party in

16    interest for the IPRs, and the contributions of every person involved in the IPR:

17           • Documents that describe, identify, refer top, or relate to the filing of and decision
               to file petitions before the U.S. Patent and Trademark Office for the inter partes
18           review of U.S. Patent 6,502,135, 7,490,151, 7,921,211, and 7,418,504. (Request
               Nos. 15-18)

19
             • Documents that describe, identify, refer to, or relate to the engagement of an
20           decision to engage Howison & Arnott, L.L.P. to file the petitions for inter partes
               review. (Request No. 19)

21
             • Documents that describe, identify, refer to, or relate to the filings of, decisions to
22           file, and decisions not to file a petition before the U.S. Patent and Trademark
               Office for the inter partes review of any other patent not listed above. (Request
23           No. 21)

24           • Documents that describe, identify, refer to, or relate to any real party interest not
               named in any of the petitions for inter partes review listed above. (Request No.
25           48).

26           • Documents that describe, identify, refer to, or relate to the nature and extent of
               the contribution of every person or entity that contributed to any of the RPX IPR
27           Petitions (Request No. 59).

28

                                    4              RPX CORPORATION'S
                                                   MOTION TO QUASH SUBPOENA (APPLE)
                                                   CASE NO. _____

1    On January 9, 2014, RPX served VirnetX with responses and objections to the
2    Subpoena. *See* Wang Decl., Exh. 2. RPX objected to the Subpoena on multiple applicable
3    grounds, including *inter alia* that the requests: (1) sought irrelevant information; (2) were
4    overbroad and abusive, including by seeking information protected by the attorney-client
5    privilege, information that was confidential commercial information, and information that was
6    available publicly or from Apple, a party to the Apple Litigation; (3) were an improper attempt
7    to circumvent the IPR discovery procedures before the PTAB; and (4) infringed upon the First
8    Amendment rights of RPX and its employees to associate and to petition the government. *See*
9    *id.*

10   **III.    VIRNETX'S SUBPOENA SHOULD BE QUASHED**

11       **A.    VirnetX's Subpoena Should be Quashed Because it is Not Relevant to the**
             **Claims or Defenses of any Party**
12
13       VirnetX's Subpoena should be quashed because the documents and information sought
     are not relevant to the Apple Litigation. *See* Fed. R. Civ. P. 26(b) (discovery is limited to
14
     matters "relevant to any party's claims or defense" or "reasonably calculated to lead to the
15
     discovery of admissible evidence"); *see also Moon v. SCP Pool Corp.*, 232 FRD 633, 637 (C.D.
16
     Cal. 2005) (relevance of information sought by subpoena is considered in motion to quash).
17
         VirnetX has sued Apple for patent infringement. Wang Decl., Exh. 3. RPX is not a
18
     party to the Apple Litigation and has not been accused of infringing VirnetX's patents. *See id.*
19
     Despite the fact that RPX has no connection to the Apple Litigation and no knowledge relevant
20
     to it, VirnetX's Subpoena to RPX demands production of 84 broad categories of documents and
21
     testimony on 84 corresponding topics for deposition. *See* Wang Decl., Exh. 1.   The
22
     information sought can be generally categorized as follows: (1) information regarding RPX's
23
     IPR Petitions to PTAB; (2) RPX's general corporate information; (3) financial information
24
     concerning RPX and its employees; and (4) the commercial and personal relationships,
25
     associations, and agreements between RPX and any of its employees and a plethora of other
26
     companies and people. None of this information is relevant to the claims and defenses at issue
27
     in the Apple Litigation. The Subpoena does not seek information regarding the infringement of
28

---

5                                    RPX CORPORATION'S
                              MOTION TO QUASH SUBPOENA (APPLE)
                                         CASE NO. _____

1    any VirnetX patent, the validity or invalidity of the patents-in-suit, or information regarding the
2    accused products of Apple. *See* Wang Decl., Exh. 1. Thus, the discovery sought by VirnetX is
3    irrelevant to their patent infringement actions and VirnetX's Subpoena should be quashed. *See*
4    *Moon*, 232 FRD at 637 (relevance of requests considered in motion to quash).

5           VirnetX may argue that some of their requests are relevant to the question of whether
6    Apple is collaterally estopped from challenging the validity of the patent claims involved in the
7    IPR. Federal law prevents a party who institutes an IPR (or who is the real party in interest or
8    privy of the petitioner) to assert the invalidity of a patent claim on a ground "that the petitioner
9    raised or reasonably could have raised during that inter partes review." 35 U.S.C. § 315(e)(2).
10   Thus, if Apple were a real party in interest or privy of RPX with respect to the IPR Petitions
11   filed by RPX[2], Apple could be estopped in the future from asserting the invalidity of the patent
12   claims challenged in the IPR Petitions.

13          However, such concerns are both speculative and premature. First, collateral estoppel
14   does not attach until the PTAB issues "a final written decision." 35 U.S.C. § 315(e). At this
15   time, PTAB has not even determined if it will institute the IPR Petitions submitted by RPX.
16   Even if it does so, it could be a year before the PTAB issues a final written decision. Moreover,
17   VirnetX's concerns would be highly speculative because before any estoppel would attach, the
18   PTAB would have to make findings both that the patents involved were valid and that Apple
19   was a real party in interest with respect to IPR Petitions filed by RPX. Thus, any requests
20   VirnetX argues relate to the issue of collateral estoppel are irrelevant because the issue is
21   premature and speculative, and the Subpoena should be quashed. *See Mattel Inc. v. Walking*
22   *Mountain Productions*, 353 F.3d 792, 813 (9th Cir. 2003) (upholding quashing of subpoena to
23   non-party and imposition of sanctions to subpoenaing party where subpoena was "way too
24   broad" and where "no attempt had been made to try to tailor the information request to the
25   *immediate needs of the case*") (emphasis added). Moreover, as explained further below, there

27
28   [2] As noted previously, RPX has certified in its IPR Petitions that it is the only real party in
     interest, and there is no evidence to the contrary.

is a mechanism in an IPR proceeding to seek discovery regarding these issues, and VirnetX's Subpoena is an improper end-run around that mechanism.

**B. VirnetX's Subpoena Should be Quashed because it is Overbroad, Seeks Protected Information, and Seeks Information Available Elsewhere**

A court must quash a subpoena that "subjects a person to undue burden" or that "requires disclosure of privileged or other protected matter." Fed. R. Civ. P. 45(d)(3)(A)(iii) and (iv). In addition, a court may quash a subpoena that "requires disclosure of a trade secret or other confidential research, development, or commercial information…." Fed. R. Civ. P. 45(d)(3)(B)(i). In determining whether a subpoena is unduly burdensome, courts consider "such factors as relevance, the need of the party for the documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are described and the burden imposed." *Moon*, 232 FRD at 637. Moreover, non-parties are entitled to greater protections from overly burdensome discovery requests. *Dart Indus. Co., Inc. v. Westwood Chem. Co., Inc*., 649 F.2d 646, 649 (9th Cir. 1980). Finally, a court "must also limit discovery if it is unreasonably duplicative, if it can be obtained from a source that is more convenient or less burdensome, or if the burden in producing it outweighs its likely benefit." *McErlain v. Park Plaza Towers Owners Ass'n*, 2013 U.S. Dist. LEXIS 179176, No. C 13-03232 MMC (LB), at * 6-7 (N.D. Cal. Dec. 19, 2013) (citing Fed. R. Civ. P. 26(b)(2)(C)).

1. VirnetX's Subpoena Demands Production of Almost Every Document RPX Possesses

Here, VirnetX's requests are overbroad, arguably calling for every document in RPX's possession, custody, and/or control. For example, Document Request No. 9 seeks "[d]ocuments that describe, identify, refer to, or relate to the Company's business or industry." *See* Exhibit 1. Every corporate document could be said to "relate" to RPX's business or industry. RPX is a public company with over 100 employees; producing every corporate document would encompass the production of voluminous documents. Saraceni Decl., ¶¶ 2 and 5. Such a production would take weeks if not months to accomplish and would impose a significant cost and loss of productivity to RPX. *Id*., ¶ 5. Similarly, other overbroad requests seek documents that relate or refer to any of RPX's members and clients (No. 82) and documents that relate or

1  refer to any RPX's officers, directors, employees, attorneys, agents, representatives, and

2  consultants (No. 6). *See id.*

3  These three examples requests (as well as numerous others) are not limited in scope in

4  any way – no time restrictions, no date restrictions, and no subject matter restrictions. They

5  demonstrate that VirnetX has made no attempt to limit the information sought from Non-Party

6  RPX, and such an abusively-drawn subpoena should be quashed. *See* Fed R. Civ. P. 45(d)(1)

7  ("A party or attorney responsible for issuing and serving a subpoena must take reasonable steps

8  to avoid imposing undue burden and expense on a person subject to the subpoena."); *see also*

9  *Mattel Inc. v. Walking Mountain Productions*, 353 F.3d 792, 813 (9th Cir. 2003) (upholding

10 quashing of subpoena to non-party and imposition of sanctions to subpoenaing party where

11 subpoena was "way too broad" and where "no attempt had been made to try to tailor the

12 information request to the immediate needs of the case").

13                    2.    VirnetX's Subpoena Demands Production of RPX's Protected
                            Confidential and Privileged Information

14      VirnetX's Subpoena is also overbroad in demanding broad swaths of protected

15 information. **First**, the Subpoena should be quashed because it seeks RPX's confidential

16 commercial information. *See* Fed. R. Civ. P. 45(d)(3)(B)(i). For example, Request No. 83

17 seeks "[d]ocuments that describe, identify, refer to, or relate to the Company's relationship with

18 each of its members or clients." Wang Decl, Exh. 1. RPX's relationship with its members and

19 the terms of its agreements with them is confidential commercial information. Saraceni Decl., ¶

20 6. Several other requests similarly seek information concerning RPX's business dealings and

21 other confidential information. *See, e.g.,* Wang Decl., Exh. 1, Request Nos. 79, 80, and 81

22 (seeking all communications, agreements, and relationships with the vague and overbroad

23 category of "any entity providing intellectual property services"). **Second**, the Subpoena must

24 be quashed as it specifically calls for information protected by the attorney-client privilege. *See*

25 Fed. R. Civ. P. 45(d)(3)(A)(iii). To take just two examples, *VirnetX has demanded the phone*

26 *records of RPX's attorneys and documents referring to legal advice RPX received from its*

27 *attorneys*:

28

1    • As to any of your past and present directors, officers, employees, agents, organizers, attorneys, agents, representatives, and consultants who was involved, to any extent in any IPR concerning VirnetX's patents (including the decision to file any IPR involving VirnetX's patents), all such persons' phone logs and records (for both personal and business phone lines) over the past three (3) years. [Document Request No. 42]

    • Documents that describe, identify, refer to, or relate to any type of input, advise, direction, instruction, or counsel provided to the Company or its attorneys regarding the decision to file or the filing of any of the petitions for inter partes review listed above. [Document Request No. 62]

    Wang Decl., Exh. 1.

    Such requests are not just overbroad but also clearly call for the production of protected information. Thus, they should be quashed.

    3.    VirnetX's Subpoena Demands Information that is Available Publicly or from Apple

    Finally, the overbreadth of VirnetX's Subpoena is further demonstrated because much of the information sought is available either publicly or from Apple, a party to the Apple Litigation. *See* Fed. R. Civ. P. 26(b)(2)(C). First, many of VirnetX's discovery requests seek information that can be obtained from Apple. For example, VirnetX seeks documents that relate to RPX's relationship with Apple [Document Request No. 22], documents that relate to any agreements between RPX and Apple [Document Request No. 34], and documents that relate to communications between RPX and Apple [Document Request No. 71]. To the extent any such information is even relevant to the Apple Litigation, such information can be more readily obtained directly from Apple, as Apple is a party to the Apple Litigation while RPX is not. As such, VirnetX should seek this information from Apple. *See Nidec Corp. v. Victor Co. of Japan*, 249 F.R.D. 575, 577 (N.D. Cal. 2007) (quashing subpoena and holding that "[t]here is simply no reason to burden nonparties when the documents sought are in possession of the party defendant").

    In addition, RPX is a publicly traded company, and much of the information sought by VirnetX concerning RPX's basic corporate information is available publicly. For example, VirnetX has requested documents related to RPX's principal place of business [Document Request No. 7] and its market capitalization [Document Request No. 12]. *See* Exh. 1. This

RPX CORPORATION'S
MOTION TO QUASH SUBPOENA (APPLE)
CASE NO. ____

1  information is available from public sources, including from RPX's public filings with the SEC.

2  Thus, while not conceding that any such information is relevant to the Apple Litigation, such

3  information is clearly available to VirnetX from a source "more convenient, less burdensome, or

4  less expensive" than a subpoena on Non-Party RPX. *See* Fed. R. Civ. P. 26(b)(2)(C).

5      Requests for information that can be obtained from a party to the Apple Litigation or

6  which is publicly available also demonstrate that VirnetX has made no attempt to limit the

7  information sought in the Subpoena. Accordingly, the Subpoena should be quashed. *See*

8  *Mattel,* 353 F.3d at 813 (upholding quashing of subpoena to non-party where "no attempt had

9  been made to try to tailor the information requests to the immediate needs of the case").

10  ## C. VirnetX's Subpoena is an Improper Attempt to Circumvent the IPR Proceedings

11  VirnetX's Subpoena should also be quashed because it has been served for an improper

12  purpose. An improper purpose violates the mandate of Rule 45 that the issuer of the subpoena

13  "take reasonable steps to avoid imposing burden or expense." *See Highfields Capital*

14  *Management, L.P. v. Doe*, 2005 U.S. Dist. LEXIS 29680 (N.D. Cal. May 31, 2005) (holding

15  that the "authorities make it clear that a finding that a party had issued a subpoena in bad faith,

16  or for an improper purpose...would be a sufficient basis for concluding that the party...had

17  breached its duty under Rule 45(c)" and thus be subject to sanctions). Here, the Subpoena was

18  brought for the improper purpose of attempting to circumvent the discovery procedures

19  mandated for use in IPR proceedings. Congress designed IPR proceedings to be a quick and

20  cost-effective alternative to determinations of patent validity in federal district court patent

21  litigation. *See* H. Rep. No. 112-98, at 45-48. While discovery in federal courts can be

22  expensive and time-consuming, IPR proceedings must be completed within one-year by statute.

23  35 U.S.C. § 316(a)(11). As such, discovery in IPR proceedings is of significantly limited

24  duration. Moreover, IPR discovery is also limited to two areas: (1) depositions of witnesses

25  submitting affidavits or declarations; and (2) additional discovery that is "necessary in the

26  interests of justice." 35 U.S.C. § 316(a)(5); *see also* 37 C.F.R. 42.51(b)(2) ("The moving party

27  must show that such additional discovery is in the interests of justice....").

28

10

RPX CORPORATION'S
MOTION TO QUASH SUBPOENA (APPLE)
CASE NO.

A party seeking discovery in an IPR proceeding must first meet and confer with the opposing party. 37 C.F.R. 41.123(b). If the opposing party objects to the requested discovery, the requesting party must file a motion for authorization with the PTAB, describing in detail the relevance of the requested information. 37 C.F.R. 41.156(a). The party requesting discovery has the burden of showing that it is "in the interests of justice." 37 C.F.R. 41.150(c). In determining whether the request is "in the interests of justice", the PTAB considers various factors, including whether the discovery is "more than a possibility and mere allegation" and whether the requests are overly burdensome. *Garmin International v. Cuozzo Speed Technologies LLC*, Case IPR2012-000001, Paper 26 at 6 (PTAB March 5, 2013).

Here, the information sought by the subpoena relates to the IPR Petitions filed by RPX rather than the Apple Litigation. For example, VirnetX has demanded documents and testimony related to RPX's decision to file the IPR Petitions (Request Nos. 15-18), documents related to the real party in interest for the IPR Proceedings (Request Nos. 48-50; 63-64), the identify and role of each person or entity who "contributed" to RPX's IPR Petitions (Request Nos. 58-62), and RPX's relationship with Apple (Request Nos. 70-72). Such requests are clearly intended to determine whether Apple is the real party in interest with respect to RPX's IPR Petitions or somehow in privity with RPX. There is no basis for this contention (and indeed RPX has certified as part of the IPR Petitions that it is the only real party in interest).

VirnetX is seeking discovery in the IPR Proceedings before the PTAB. Saraceni Decl., ¶ 10. To date, such request is pending before the PTAB. *Id.* VirnetX has attempted to evade the limitations of discovery in IPR Proceedings by seeking the same discovery from this Court. They are not permitted to do so. A district court may only issue a subpoena in support of a PTO proceeding after the PTO pre-authorizes the discovery. *See Abbott Laboratories v. Cordis Corp.*, 710 F.3d 1318, 1326 (Fed. Cir. 2013) ("we conclude that Section 24 only empowers district courts to issue subpoenas in proceedings for which the PTO has authorized parties to present evidence by means of depositions"). VirnetX has obtained neither an agreement from RPX or the authorization from the PTAB to pursue this discovery. Thus, the Subpoena must be quashed.

## D. Enforcement of VirnetX's Subpoena Chills First Amendment Rights and Thus Must be Held to a Higher Standard of Review

Finally, VirnetX's Subpoena should be quashed because its enforcement would chill the First Amendment rights of RPX, its employees, and almost everyone else ever associated with RPX. The subpoena power is limited by constitutional protections. A court order, even when issued at the request of a private party in a civil lawsuit, constitutes state action and as such is subject to constitutional limitations. *See, e.g., New York Times Co. v. Sullivan*, 376 U.S. 254, 265 (1964). Thus, the subpoena power should be limited when it impacts First Amendment rights. *See, e.g., NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449, 461 (1958). Corporations, like individuals, are entitled to First Amendment protection. *Citizens United v. FEC*, 558 U.S. 310, 342 (2010) ("First Amendment protection extends to corporations").

Where discovery encroaches upon freedoms protected by the First Amendment, courts must impose higher standards. The Ninth Circuit sets forth a two-part test for analyzing claims of infringement of rights protected by the First Amendment in a discovery dispute. *Perry v. Schwarzenegger*, 591 F.3d 1126, 1140 (9th Cir. 2009). First, the party asserting the protection or privilege must make "a prima facie showing of arguable first amendment infringement." *Id.* A *prima facie* showing "turns not on the type of information sought, but on whether disclosure of the information will have a deterrent effect on the exercise of protected activities." *Id.* at 1141. Once the party asserting the privilege has made this showing, the party seeking disclosure must show that the "information sought is *highly relevant* to the claims or defenses in the litigation – a more demanding standard of relevance that that under the Federal Rule of Procedure 26(b)(1)." *Id.* at 1141 (emphasis added). Requests for such information must also be "*carefully tailored* to avoid unnecessary interference with protected activities, and the information must be otherwise unavailable." *Id.* (emphasis added).

The higher *Perry* standard applies here, and VirnetX's Subpoena fails the test. Enforcement of the Subpoena would chill the First Amendment rights of freedom of association and freedom to petition the government. The staggering intrusiveness of the Subpoena into the constitutionally-protected freedom to associate is illustrated by the following request, which

RPX CORPORATION'S
MOTION TO QUASH SUBPOENA (APPLE)
CASE NO. _____

1  calls for the *production of documents that identify and relate to any group than anyone*

2  *connected with RPX belongs to*:

3     •   Documents that describe, identify, refer to, or relate to any associations,
       organizations, foundations, partnerships, groups, or corporate entities to which
4       the Company or any of the Company's past and present directors, officers,
       employees, agents, organizers, attorneys, agents, representatives, or consultants
5       belongs." (Document Request No. 65)

6     Permitting this discovery would chill the First Amendment rights of RPX and its

7  employees. Individuals or companies who believed that they could be required to disclose their

8  personal, professional, and political associations simply by virtue of being employed or of

9  conducting business would refrain from or limit their associational activity. Saraceni Decl., ¶ 7.

10 Moreover, companies such as RPX would find it more difficult to attract and retain employees

11 if those individuals feared disclosure of their personal associations. *Id.*

12     VirnetX's Subpoena also infringes upon RPX's constitutional right to petition the

13 government. The First Amendment provides in relevant part that "Congress shall make no

14 law...abridging...the rights of the people...to petition the Government for a redress of

15 grievances." U.S. Const. amend. I. As explained *supra*, the Subpoena was clearly served in

16 response to the IPR Petitions filed by RPX. RPX filed the IPR Petitions on November 20, 2013.

17 *See* Saraceni Decl., ¶ 3. On December 26, 2013, just a little over a month later, VirnetX served

18 the Subpoena on RPX. *See* Exh. 1. At least 18 of the requests and 18 of the deposition topics

19 explicitly seek information regarding the IPR Petitions filed by RPX. *See id.* Petitioning an

20 administrative agency is protected conduct. *See Kottle v. Northwest Kidney Ctrs.*, 146 F.3d

21 1056, 1059 (9th Cir. 1998). Requiring a non-party to a litigation that sought to institute an IPR

22 regarding one of the patents-in-suit to disclose why it filed a petition with the PTO for an IPR,

23 who was involved in the filing of the petition for an IPR, or why it chose a particular law firm to

24 file the IPR petitions would discourage RPX and others persons and entities from filing IPR

25 petitions in the future. Saraceni Decl., ¶ 8. Enforcing VirnetX's overbroad Subpoena would be

26 an attack on Non-Party RPX for exercising its constitutionally-protected right to petition the

27 government and should be quashed as a violation of RPX's First Amendment rights.

28

RPX CORPORATION'S
MOTION TO QUASH SUBPOENA (APPLE)
CASE NO. _____

The intrusion into RPX's constitutional-protected rights to associate and to petition the government, when weighed against the lack of any relevance or tailoring of the requests – much less a showing that the requests are "highly relevant" and "carefully tailored" – requires that the Subpoena be quashed. *See Perry*, 591 F.3d at 1141.

## IV. CONCLUSION

For the foregoing reasons, Non-Party RPX requests that the Court quash in its entirety the Subpoena served by VirnetX on RPX.

DATED: January 21, 2014

Respectfully submitted,

WANG & CHANG

Philip J. Wang

Attorneys for Non-Party *RPX Corporation*

RPX CORPORATION'S
MOTION TO QUASH SUBPOENA (APPLE)
CASE NO. _____